and also is here for the appellate Sabatino and Scott Dion is here for the United States and Mr. Encino Sosa, you may begin Good morning, my name is Israel Encino Sosa and I represent Mr. James Sabatino who is perhaps the most restricted prisoner in the By way of background, Mr. Sabatino is housed in isolation in a special wing in the Supermax Detention Center in Florence, Colorado. He is in a cell that is approximately 12 by 7 feet in an area they call the suites over there in ADX. The only other person, human being that is housed in that range is a Joaquino Chapo Guzman who has similar communication restriction as Mr. Sabatino. Mr. Sabatino is watched 24-7 via video and also he's monitored with audio. He has their infrared and night vision cameras that keep a surveillance on him, Mr. Sabatino. When he leaves the cell for any medical reasons or other reasons, he is placed in a, he's tied down to a chair and he's chackled down. The only time that he can see the sky is an hour a day but given that there's, it's freezing over there and it's a lot of snow, he rarely... That sounds really rough. Can we move to the statutory issue in the case? Yes, yes. I think that might be a better use of your time. Yes. I'm sorry, Your Honor. The statutory issue, Your Honor. Why don't you address jurisdiction first? Jurisdiction, yes. 33582D, the Second Circuit in the case of Felipe has looked at the congressional intent and it determined that the congressional intent is to keep the defendant from committing other crimes. It's not to punish the individual and what they did... In Felipe, the court assumed that it had jurisdiction but didn't say anything about whether or not it has jurisdiction to entertain a motion to modify this sort of condition, modify communication restrictions. I guess that what I am struggling with is the statute, Title 18 of the United States Codes sets out certain circumstances where a court can modify a term of imprisonment. It's got enumerated situations and there's nothing enumerated about whether or not a court can modify conditions of communication So if that's the case, I mean, how does the court, the district court, have jurisdiction to even entertain the motion to begin with? Well, in Felipe, the court looked at the fact that the district court had retained jurisdiction regarding the special conditions under 3582. But you can't retain authority that you don't have in the first place, can you? Well, that's the question that was before the Second Circuit, Your Honor. There hasn't been a case here interpreting that. The Eighth Circuit also reached a similar holding regarding jurisdiction and, in fact, in Felipe and Allman, they have modified the communications restrictions of the two defendants on several occasions. Now, the government in their letter brief also brings out that there is... You mentioned the Eighth Circuit. I just want to clarify because I thought the holding of the Eighth Circuit, and maybe I'm wrong, I thought they held that there has to be a motion from the U.S. Attorney or the BOP to modify restrictions post-sentencing. Right. They held that, Your Honor, because it was a suspending motion to add extra restrictions on Mr. Allman. But if you look at footnote number two, it says a defendant may also be allowed to file a motion to modify. And that's where I get that. Okay. Can I ask you to address something for me? So my initial kind of assessment of the statute, 3582, the section that we're proceeding under about communication restrictions, is that the statute only allows for a restriction to be imposed against a specified person that uses the language specified person. Right. And let's just assume that I thought that this sentence was in violation of the statute because it doesn't restrict with respect to a specified person. It restricts with respect to the entire world. What would I do if I thought that? I think, well, what Judge Martin did in the case of Congressional intent, and basically what he did is he came up with a practical way of addressing this problem. And it was a fail-safe way where he said, okay, since we don't know all the members of a gang or a group that may enable a defendant to commit further crimes, we're going to initially or we're going to initially hold it, find it against all persons. And of course, a defendant, there's most people in the world are not going to help a defendant commit any further crimes. And then the way that he took care of the problem is, we're still going to keep the letter of the statute, but the way we're going to do it is the other way around, backwards. Yeah, and that's what, and I just, and so, and maybe, you know, you're in this, I mean, you are in the position you're in, but I don't mean to, but let's assume that I want to follow the text of the statute. And I think, you know, the text of the statute says the only two people that can file a motion post conviction are BOP and the U.S. Attorney. And the text, but the text of the statute also says that you can only impose this restriction as to specified persons. If you find probable cause as to specified persons. And so, the problem, I mean, I mean, there's a practical problem in that, okay, let's say Mr. Sabatino, there are a lot of people that are members of his group, a member, a lot of members of the convenal crime family. Yeah, but see, that's, and I mean, and I'm not, I'm going to ask the government a lot about this. There's no practical way of doing that. That seems to go to the issue of maybe the government couldn't meet its burden to show probable cause to a specified person to restrict communications as to that person. Maybe that's the problem and not, you know, we're in this situation, it seems to me, because the statute doesn't actually contemplate the kind of restriction that was imposed here. Right. And so now we're trying to figure out what to do given that the restriction is illegal. Now, in this case, basically what we saw, I'm sorry, if the court has this jurisdiction to entertain the motion, does it have to have a probable cause determination every time it comes up with a new name that he wants to communicate with? Yes, Judge, but I mean, that's basically taking care of the beginning stage, like we did here through the previous counsel, they submitted the name to the U.S. attorney and to the FBI, and then they went through a vetting process. But does the court, I mean, the court's got to decide whether or not there's probable cause there. Yes, but I think in most cases, the problem is going to be resolved at the vetting stage with the FBI. Obviously, if there's anything negative that shows up in the background of that particular individual, then obviously a defendant is not going to proceed. In this case, we were informed that he passed the background investigation, and in fact, the government at no point argued otherwise in its response to defendant's motion. Let's assume that there's jurisdiction to entertain the motion, and so we can reach the merits. I'm having a hard time determining what our standard, is it a review, is it our standard of review abuse of discretion or is it de novo? Usually when we're reviewing whether a plea agreement is properly applied, we apply a de novo standard of review, right? We're not asking to set aside a plea agreement. We're just asking that the court use the proper standard in granting or denying a motion to abuse its discretion. This judge said, well, you haven't given me good reasons to modify the conditions, your communication restrictions. You haven't given me good reasons. If we agree with that, if we agree with that, then there's no abuse of discretion. Well, Judge, we take objection to the fact that the district court did not follow the correct standard, the probable cause standard. They basically held that he, Mr. Salvatino, had not. That's not what I'm asking, though. What I'm asking is, if he hasn't given good reasons to permit him to have communications with his stepmother's fiance, he hadn't given good reasons, there's no abuse of discretion. Well, I think he did give good reasons. Basically, his stepmother was 76. She was hospitalized. That's his sole social contact. This gentleman is her fiance, and he just wanted to be able to learn and keep up with his stepmoms, who he loves dearly, condition. Your position on the merits, if I understand it, Mr. Encinosa, is that the district court basically shifted the burden to you to prove need, as opposed to requiring the government to prove that there was probable cause to exclude the stepmother's fiance with the restriction. That's correct, Your Honor. With regards to jurisdiction, the question that Judges Wilson and Brasher have asked you about, what happens if and when? I know there's not much law out there on the issue. What happens when there is a contention by one side or another that probable cause has dissipated, and there's no longer probable cause? Does a district court have jurisdiction to take up a motion by either side to terminate or modify the restriction? Forget about adding somebody, but if a district court enters an order that says you're barred from communicating with X and Y, and then a lengthy prison sentence ensues, and the probable cause necessary for the entry of the communication restriction evaporates, is a district court left powerless to do nothing? I don't think the district court is left powerless, but I think you're referring to, in the plea agreement, they agreed to the standard for ending all the restrictions. No, no, I know, but I'm trying to get away from what the parties agreed to here. I'm talking statutorily. If probable cause for the communication restriction evaporates, right? Okay. Can a district court modify its communication restriction? Not suspended. No, no, on motion of one of the parties. Either the defendant or the government, yes. Okay. All right. Thank you. Thank you. Thank you, counsel. You've reserved some time for rebuttal. Yes, thank you. Mr. Dionne. Good morning, honors. May it please the court. Scott Dionne on behalf of the United States. At counsel table, I have Assistant United States Attorney Christopher Brown with me. He was the trial attorney on the case. Plain and unambiguous text generally controls, but in rare cases, the plain and unambiguous text leads to unacceptable, absurd results. We believe this is one of those cases. We laid out a few examples in our supplemental letter brief, which I'll review. First being, because of the nature of the restriction here, if the government or the defendant is not able to move to modify the restriction, the defendant could, for example, not be able to add his newly appointed appellate attorney to the restriction or a newly appointed trial attorney to the restriction. Can I ask you a question? It just seems to me that the problem here is not one that . . . we're trying to solve a problem of the district court imposing a sentence that is in violation of the statute by then modifying the statute on the back end to allow the district court to do some stuff to make it less illegal. What do you say . . . I mean, isn't the problem here that the statute only allows for a district court to prohibit communications as to specified persons and the district court just didn't do that? The district court following Felipe . . . Yeah, Felipe. Explain to me why Felipe is right. It's from the Second Circuit and we don't have to follow it. Right. We believe Felipe is right because, again, as Appellant explained, this type of restriction follows, I guess, for lack of a better term, the spirit of the law, which is . . . Yeah, that old spirit of the law thing, you know, that's . . . I mean, how is that supposed to work? You just sort of intuit, like, the sort of the, I don't know, the Jacob Marley behind the Ebenezer Scrooge of the law. We kind of follow that Jacob Marley around. The problem with this defendant is that he's shown that he . . . anybody that he is in communication with, whether it be a BOP prison guard, whether it be somebody on the outside, whether it be other inmates, it presents a risk that he'll continue running his enterprise. So, there's a possibility here. The problem is that Congress may not have foreseen this sort of situation. Which is true. And that's why it targeted specified persons. Right, which is true, but fundamentally here, Sabatino agreed to this restriction. So, even if it is statutorily incorrect, he has to raise that argument. One, he's waived it by not raising it. Two, he's, in his plea agreement, he can't . . . he signed an appellate waiver, so he can't actually challenge it. Right. So, for those two reasons . . . You're . . . this is sort of an invited error type argument? Yeah, there's invited error, there's waiver, he . . . and the bottom line is he actually asked for this restriction. So, this was part of the plea bargain. And you agreed to it. The government agreed to it. The government agreed to it. Yeah. And so, we're stuck here with the restriction, whether or not it violates the statute. That's a question that's not really here on review. I mean, but you can't . . . It's one thing to prevent somebody from appealing through an appeal waiver, so that the issue never gets to an appellate court. But once you're here, you couldn't have agreed, for example, to a supervised release term that exceeded statutory limits, right? Right. That would be correctable plain error, if the case ever got to us somehow. If the case ever got to you, right? You can't say, listen, in exchange for you giving me a lower sentence on the prison side, I'll take a 10-year term of supervised release, even though the statute caps it at five. And the district court doesn't notice the error and imposes a 10-year term. You can't agree to something that is statutorily impermissible, right? I'm not sure that that's true, in the sense that the issue would either have to be raised, and I'm not aware of any authority for the court to sua sponte, vacate that order, if that's the case. And again, I'm not aware of any cases that say that the court has the to raise that sua sponte. There's nothing we can do. I'm not saying we can or should. I'm just suggesting that it may not be kosher for the parties to agree to violate a statute in a plea agreement. Right. And generally, in our plea waivers, there's language that says if a sentence exceeds the statutory maximum, the defendant can still file an appeal. But he hasn't appealed. The problem here, he hasn't appealed. It's been over five years. So he's outlasted all those deadlines have since passed. And so the only recourse here, I guess, would be for this court to sua sponte to take it up. Yeah. So I mean, I think the implications of this for this case may be that he's stuck with this communication restriction that he agreed to. The statute 3582 doesn't give him any basis to modify the sentence. But maybe there's some other way that he could modify the sentence, such as like a writ of quorum noblis or something like that. Yeah, I think and again, we argued in our supplemental letter brief that we believe all the parties would have jurisdiction to file a motion to modify. If the court were to disagree with that, then yes, I think there's other avenues for him to. Here's, go ahead, go ahead. You know, there's, I forget the subsection, but there's a provision in the supervised release statute that allows a district court to modify or terminate a of that ruling on the motion to modify. But this is not a condition of supervised release. It's a part of the criminal sentence itself. So going back to Judge Brasher's question and Judge Wilson's question, I'm sorry, how do we have jurisdiction? Does a court have inherent jurisdiction to modify a criminal sentence once imposed? Does the statute give it the authority to do so? Or does the plea agreement purport to give it jurisdiction to do so? Well, it has to be through the statute, Your Honor, because otherwise the district court can't modify a final judgment. So point us in the statute where the court has jurisdiction to do that. You can't do that, can you? In the statute, plain text of the statute says the court may include a restriction, restricting a defendant's ability to communicate with a specified person. It does not say anything about . . . Upon motion by . . . . . . ability to modify, either upon motion by BOP or the government. Okay. It says the district court may include, in other words, it may add as part of the sentence. Subsection E says upon motion by the government or the Bureau of Prisons, because these sorts of decisions about . . . these sorts of decisions, when someone's sentenced and they're sent to prison, traditionally we left those decisions within the discretion of the Bureau of Prisons and the United States Attorney. Correct. Traditionally. And we agree with that premise. The problem with the text is it says that upon motion by BOP or the United States Attorney, the district court may include. It doesn't say may modify, may change. And so our reading of that is that the district court, there has to be a motion by BOP or the government after the final judgment is entered in order to add people to the list. In this case, of three, except for three people. But that's our reading of the statute. Can I ask you a question that follows up on something that Judge Wilson said? Traditionally, I guess maybe not traditionally, currently, always, when someone is sentenced, the judge pronounces the sentence, but then the conditions of confinement are entirely at the discretion of the executive, right? Where you're going to be housed, whether you get some kind of A district judge can make recommendations and things of that nature, but has no control over that. Why would the government need this statute, I guess I would say? So if you've got somebody like Mr. Sabatino who commits all sorts of crimes in prison, and he's sentenced to a long term imprisonment, why wouldn't the Bureau of Prisons just be able to say, you know what, this is not a guy we want roaming around general population, communicating freely with everybody. The Bureau of Prisons, couldn't they just say, yeah, we're going to stick this guy in some kind of quasi-communication-free cell and really monitor him? Couldn't they just decide that themselves? They're limited by regulation, so it's 28 CFR section 501.3A, which is colloquially, I can't say the word, it's known as the SAMS restriction, and for those types of restrictions, SAMS restrictions, they're limited to violence or acts of terrorism. Congress recognized, we can assume, that there's a distinction between a defendant that his communications will reasonably, foreseeably lead to threats of violence or terrorism, versus other types of defendants like RICO defendants and drug defendants that might just continue running their enterprise without threatening violence or terrorism while confined, and so . . . Let me give you one possible, I'm not sure that it works, but let me give you one possible way of having a district court exercise jurisdiction on a motion to modify. The statute, the subsection, starts with this language, the court, in imposing a sentence to a term of imprisonment upon a defendant convicting of certain offenses, then it says, or at any time thereafter upon motion by the director of the Bureau of Prisons or a United States attorney. If you're beyond the temporal time period of imposing a sentence, what does it mean, or at any time thereafter? That means a district court can go back 10 years later on a 20-year sentence and decide, okay, now you're a threat, I'm going to impose a communication restriction, it can do that? Yes. That's your reading of the statute? That's our reading of the statute. So your view is that as long as the prison term has not expired, has not been run, the district court can do this, has jurisdiction to do this? Right. And so at any time after final judgment is entered, if the government, of course, shows probable cause to believe the communications will lead . . . Well, that's the merits, right? But the question is jurisdiction to decide the merits. And you say that this can happen any time upon motion, at least of the U.S. attorney or the director of the Bureau of Prisons. Right. The problem is that there's a special section in the United States Code just to address communication restrictions for organized crime figures. So all these other statutes don't relate to . . . I mean, Congress says when it comes to organized crime figures, look to subsection E. Right. And if I'm not mistaken, I think Judge Jordan was reading from subsection E where it says at any time thereafter . . . Yeah. Okay. Could I talk to you about the spirit of the law? Let's go back to the spirit of the law. So the way I . . . I think you're right that this subsection E says as long as this person is in prison, the United States or BOP can make this motion with respect to a specified person. It seems to me that the spirit of this provision is that you put, you know, the godfather in prison. And then after the prison sentence, the government finds out, you know what, he's communicating with his son to run the criminal enterprise. Let's go in front of a judge, let's make a probable cause showing, and let's restrict his communications with his son. Right. Why isn't that the spirit of this law? Because it does give you . . . if the spirit of the law were you can just restrict everyone at the initial sentencing, you can never communicate with the entire world, why would the government need to go and add people in based on probable cause? So the problem with that is, yes, I think as a general use case, this statute was designed, seems to be designed, to add people gradually as the government learns of new people. That might present a risk that the defendant would continue running his enterprise. The problem in this case is that the defendant's criminal history was so severe and he showed such an ability to corrupt anybody he became in contact with, whether it be BOP guards, other prisoners, other prisoners' family members, other people on the outside, that it became impossible for the government to name every single person that . . . Yeah, and I get that. So one issue though, I mean this is a unique character, correct me if I'm wrong, but wasn't most of his criminal conduct done via contraband cell phones and things of that nature? Yes. So I mean he wasn't . . . those are illegal for him to have anyway. I mean the judge could have said like a thousand times like you're not allowed to contact people. He has contraband cell phones. He doesn't . . . I mean that's what . . . I'm having just kind of a problem figuring out how this restriction is responsive to the frauds that he committed from prison, given that he wasn't supposed to commit those frauds anyway. I mean could have been restricted all sorts of ways. He still had contraband cell phones that he was using. Yeah, the restriction restricts his communication in prison as well. And so the way that he got the contraband cell phones was, I believe the record says, through BOP guards. But so you don't think that . . . and I mean maybe you're right about this, I just haven't looked, but you don't think the BOP could say, you know what, with this guy who is known to be a user of contraband cell phones to commit massive frauds that are like bizarrely successful, we're going to restrict his communications to like one prison guard a day and we're going to search the prison guard. I mean couldn't they do something like that on their own? I'm not aware of any other regulation besides the SAMS restriction regulation 501.3. Generally, yes, the period of confinement is within the province of BOP. It's generally BOP's decision how to house their inmates. But I'm not aware of any regulation off the top of my head. Is there anything that would restrict BOP, I mean that you know of that would restrict BOP from . . . I mean I'm just imagining, you know, I know a couple of wardens of prisons. I'm just imagining if the warden was like, hey, we've got this guy Sabatino who always commits these crimes from prison. Is there anything that would prevent the warden from just saying like, we're only going to let one prison guard interact with this guy and we're going to search him like twice a day to make sure he doesn't do this kind of stuff again. I mean is there any reason why the warden couldn't just do that? I'm not sure there is. Can his stepmother visit him in prison? I don't believe so. Okay. And if something should happen to a stepmother and we determine that the court did not abuse its discretion in denying his request to communicate with his stepmother's fiancee, that means no communications with anyone other than his lawyer?  Okay. All right. Thank you, Counsel. Thank you. And Mr. Encinosa, you've reserved some time for rebuttal. I see that this case presents a lot of issues. Yeah, you see the problem if we reach the merits is that he asked for the restriction to begin with and he told the judge, if I'm allowed to communicate with someone, I'm going to commit a crime again. So I mean that seems like that's a pretty good reason to deny his motion to request or at least a pretty good reason to say the judge didn't abuse her discretion. Your Honor, basically what happened here is the government was mindful that he could commit further crimes from jail and being that he was aware that this restriction as well as other restrictions were going to be lodged against him, he took it upon him in order to at least be able to talk to his stepmom. So he agreed to this because of that. It's not like he came up and says, I want all these restrictions. It was because of that. Now, he only has that one social contact. He speaks to her for 15 minutes twice a month and all the telephone calls are monitored. So there are other ways in which they can supervise Mr. Salvatino if Mr. Callaghan was added to the social contact list. Now, the problem, the other issue is that in this case, if you look at the key documents, the agreed motion, the criminal judgment, they all make reference to the Felipe case. And in fact, his criminal judgment actually retains jurisdiction and attaches the order upon the agreed motion filed by the government that also has a retained jurisdiction. That's what he entered into the agreement with. And under Felipe, it's clear. And I understand we're in a totally different circuit and you're looking at it from a different point of view. But under Felipe, basically, I submit to you that Felipe reached the right conclusion and basically requires the government to establish probable cause as to Mr. Callaghan. And be mindful that in the motion that they filed, in the response they filed, they never said, oh, no, that's false. He wasn't vetted by the FBI. He did go through the vetting process and he had no connection to Mr. Salvatino. He's one of those people that would certainly not assist Mr. Salvatino in committing any further crimes. And plus, any limited conversations he has with Mr. Salvatino will be fully monitored by the FBI and will be very limited in time. And with regards to the argument about the appellate waiver clause, I don't think it's applicable here because he's not challenging the sentence. He is challenging the modification of a sentence. With that, if you have any questions, otherwise, I'm just going to go sit down. All right. Thank you, Mr. Nelson.